## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Scott and Rhonda Maki, on behalf of their minor child, C.K.M., <br><br>                              Plaintiffs, <br><br> v. <br><br> Minnesota State High School League and Craig Perry, individually and in his official capacity, <br><br>                              Defendants. | Case No. 16-cv-4148 (MJD/HB) <br><br><br> **REPORT <br> AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Waiver of Security [Doc. No. 2].  Plaintiffs Scott and Rhonda Maki, on behalf of their minor child, C.K.M., move the Court for an Order (1) requiring Defendants Minnesota State High School League and Craig Perry to allow C.K.M. to continue to be fully varsity eligible during the pendency of this action; (2) temporarily enjoining Defendants from preventing, barring, or otherwise hindering C.K.M. from fully participating in school activities, including varsity athletics, at any level; (3) barring Defendants from taking any disciplinary action against any public school for allowing C.K.M. to participate in any interscholastic activity, including varsity athletics; and (4) directing that Plaintiffs are not required to give security as provided in Federal Rule of Civil Procedure 65(c).  (Mot. at 1 [Doc. No. 2].)  The motion was referred to this Court for a report and recommendation by the Honorable Michael J. Davis in an Order of

Referral dated December 13, 2016 [Doc. No. 10].  The Court held a hearing on the motion

on December 21, 2016.  For the reasons set forth below, the Court recommends that the

motion be denied.

I.      **Background**

        The facts set forth below were compiled primarily from the exhibits attached to

Plaintiffs' original complaint and the Declaration of Margaret O'Sullivan Kane,[1] as well as

the Declaration of Defendant Craig Perry and attached exhibits.  Although both the original

complaint [Doc. No. 1] and the amended complaint [Doc. No. 12] contain a "Verification"

section, no plaintiff signed the "Verification" section on either pleading, and thus the facts

alleged in the complaints cannot be considered verified.  The Court nonetheless has cited to

factual allegations in the amended complaint when they are undisputed or provide helpful

context.

        A.      **The Minnesota State High School League**

        The Minnesota State High School League ("League") is a non-profit corporation,

whose members include more than 500 public and other schools.  (Perry Decl. ¶¶ 3, 10

[Doc. No. 15].)  The League adopts standards for interscholastic activities and competitions

for athletics, speech, debate, cheerleading, and music.  (Perry Decl. ¶ 9.)  Dr. Craig Perry is

---

[1]  Kane avers in her Declaration that she is representing "Ms. Katie E. Jacobson" in this
proceeding.  (Kane Decl. ¶ 1 [Doc. No. 4-2].)  The Court presumes this is a typographical
error and that the Declaration was intended to be filed in support of Scott and Rhonda
Maki, on behalf of their minor child, C.K.M.  In addition, the Declaration lists nine
exhibits purportedly attached to the Declaration, but the nine exhibits are not, in fact,
attached.  (*See* Kane Decl.)  The nine exhibits are, however, attached to the original
complaint filed in this action [Doc. No. 1].  In the interests of time and justice, the Court
will excuse this defect and consider and cite to the nine exhibits attached to the original
complaint as if they had been properly attached to Kane's Declaration.

an Associate Director of the League.  (Perry Decl. ¶ 2.)

The League is governed by a Constitution and Bylaws, which are included in the League's Handbook.  (Perry Decl. ¶ 4 & Ex. B.)  Copies of the League's Handbook are available at the League's office in Brooklyn Center, Minnesota, and the Handbook is also publicly available online twenty-four hours a day.  (Perry Decl. ¶ 7.)

The League Constitution § 211.02 sets forth the "Powers and Duties" of the Board of Directors, which includes the power to "interpret all bylaws and provisions set forth in this Constitution, the Activity Bylaws and other bylaws and regulations of the League." (Perry Decl. ¶ 13.)  The Board of Directors has no power to pass or amend Bylaws, however, as the member schools retained that authority.  (Perry Decl. ¶ 14.)

The League's student eligibility requirements are set forth in Bylaws 101-111. (Perry Decl. ¶ 19; Kane Decl. Ex. 4.)  Bylaw 111 governs transfer eligibility.  (Kane Decl. Ex. 4.)  A "transfer student" is defined as

> one who discontinues enrollment and attendance in any high school, public
> or non-public, located in a public school district attendance area and enrolls
> in any high school in Minnesota, or outside of MN.  Essentially, a transfer
> occurs anytime the school of record changes.  A transfer is considered
> complete when the student attends school at the new school or participates
> with an athletic program.

(Kane Decl. Ex. 4 at 24.)  "A transfer student is eligible for varsity competition provided the student was in Good Standing on the date of withdrawal from the last school the student attended" and one of five enumerated criteria are met.  (Kane Decl. Ex. 4 at 21.) The five criteria are: (1) 9th Grade Option, (2) Family Residence Change, (3) Court Ordered Residence Change for Child Protection, (4) Divorced Parents, (5) and Move From

Out of State.  (Kane Decl. Ex. 4 at 21-22.)  It is undisputed that C.K.M.'s transfer did not meet any of the five criteria.

If none of the five criteria are present, "the student is ineligible for varsity competition for a period of one (1) calendar year beginning with the first day of attendance at the new school."  (Kane Decl. Ex. 4 at 22.)  The student is "immediately eligible for competition at the non-varsity level," however.  (Kane Decl. Ex. 4 at 22.)

The League's administration of student eligibility Bylaws is governed by Bylaws 300-308.  (Kane Decl. Ex. 4.)  A section of the Bylaws titled "Fair Hearing Procedure and Acknowledgment of Rights" sets forth the League's policy "to promote, extend, manage and administer competitive activities for Minnesota youth" by restricting "student movement from school to school . . . to prevent athletic transfers and ensure competitive equity amongst schools regardless of athletic ability."  (Kane Decl. Ex. 4 at 51.)  In furtherance of that policy, the League will "not determine whether a transfer was for athletic purposes but rather determines that all Transfer Students are deemed presumptively ineligible for varsity athletics unless they meet one of the exceptions listed in Bylaw 111 or as outlined in these Independent Hearing Procedures."  (Kane Decl. Ex. 4 at 51.)

The Fair Hearing Procedure and Acknowledgment of Rights section further provides that the school administrator at the receiving school makes the initial eligibility determination, after the student has completed the transfer to the receiving school.  (Kane Decl. Ex. 4 at 52.)  The receiving school administrator is responsible for informing the student and parents of the initial eligibility determination.  (Kane Decl. Ex. 4 at 52.)  The notification must include a copy of the Fair Hearing Procedure and Acknowledgment of

Rights.  (Kane Decl. Ex. 4 at 50.)  The receiving school administrator also submits the determination via an electronic transfer form to the League for review.  (Kane Decl. Ex. 4 at 52.)  The League reviews the determination and sends an electronic response agreeing or disagreeing with the school administrator's initial decision.  (Kane Decl. Ex. 4 at 52.)

If the student or parent wishes to appeal the initial eligibility decision, he or she may do so by submitting an appeal to the League through the receiving school administrator. (Kane Decl. Ex. 4 at 52.)  The appeal must include (1) the rationale for the appeal and any supporting documentation, (2) information and documentation from the receiving school, and (3) information and documentation from the sending school.  (Kane Decl. Ex. 4 at 52.) The transfer eligibility appeal process is limited to six circumstances, including:

> Intolerable conditions at the Sending School as affirmed in writing by the Sending School.  When situations arise that the student or parents believe have created an intolerable condition, the acts complained of must first be reported to the appropriate administrators at the school so they have the opportunity to investigate and take any action they deem necessary to resolve the problem.  If the parents believe that actions or situations are occurring that have an adverse impact on the physical or psychological well-being of the student, the student must have been referred to an appropriate medical or psychological professional.  That professional must prepare a written report that can be provided, on a confidential basis, to the school, the League office and the independent hearing officer if a hearing is required.  If police action has been taken, copies of the reports showing that an investigation was actually conducted and the results of that investigation must be provided.  In general, allegations alone are not sufficient.  There must be some reasonable and believable substantiation presented to indicate an incident or incidents actually occurred.  As well, the perpetrators must be identified.

(Kane Decl. Ex. 4 at 52.)

If the appeal is denied, the student or parent may request an independent hearing at the League level through the receiving school administrator.  (Kane Decl. Ex. 4 at 52.)  The

League may grant or deny the request for a hearing.  (Kane Decl. Ex. 4 at 52.)  If the request for a hearing is denied, the Board reviews the eligibility decision at its next meeting.  (Kane Decl. Ex. 4 at 53.)  If the request for a hearing is granted, "the hearing will be held before an independent hearing officer appointed by the League and at the League's expense."  (Kane Decl. Ex. 4 at 52.)  The student has the right to be represented by counsel or another person chosen by the student.  (Kane Decl. Ex. 4 at 52.)  The League Board of Directors reviews the hearing officer's recommendation at the next Board meeting.  (Kane Decl. Ex. 4 at 52.)  The Board of Directors' decision on the hearing officer's recommendation is final.  (Kane Decl. Ex. 4 at 53.)

### B.     C.K.M.

C.K.M. is a student athlete who plays basketball, volleyball, and softball.  (Am. Compl. ¶ 3 [Doc. No. 12].)  She enrolled at Dassel-Cokato High School in ninth grade after her family moved to Cokato, Minnesota, from Bettendorf, Iowa.  (Am. Compl. ¶ 12; Perry Decl. ¶ 31.)  In the fall of her eleventh grade year, on October 24, 2016, she discontinued enrollment at Dassel-Cokato High School and enrolled at Maple Lake High School.  (Perry Decl. ¶ 32.)  Plaintiffs allege C.K.M. transferred "because of the unprofessional conduct of a [Dassel-Cokato] coach and the significant adverse effect that conduct had on C.K.M."  (Am. Compl. ¶ 4.)  Plaintiffs further allege that Dassel-Cokato school officials were not receptive to their attempts to work out the issues, and "the conditions became more intolerable and hostile, expanding to include other coaching staff and members of the Maki family."  (Am. Compl. ¶ 4.)  There is no dispute that C.K.M.'s discontinued enrollment at Dassel-Cokato High School and enrollment at Maple Lake High School met the definition

of a "transfer" under League rules.

Maple Lake Activities Director Tim Tungseth submitted an electronic Student Transfer Form to the League, on which he made the initial determination that C.K.M. was ineligible for varsity competition for one full calendar year under League rules, pursuant to Bylaw 111.  (Kane Decl. Ex. 6.)  Based solely on the information provided on the form, the League indicated on October 26, 2016, its agreement with the initial determination of ineligibility.  (Kane Decl. Ex. 6 at 2.)

On November 4, 2016, Tungseth submitted an Application to Appeal an Eligibility Determination to the League, based on the "Intolerable conditions at the Sending School" provision contained in the Fair Hearing Procedure and Acknowledgment of Rights section of the Bylaws.  (Kane Decl. Ex. 6 at 3-6; *see* Kane Decl. Ex. 4 at 52.)  The intolerable conditions were described as bullying and "[s]evere retaliation including defamation, further bullying, public humiliation, sabotage, false accusations involving the family and defamation/false rumor spreading outside of the district."  (Kane Decl. Ex. 6 at 3.) Tungseth indicated there was reasonable and believable substantiation of intolerable conditions, that the family reported the incidents, and that the student visited with an appropriate psychological professional, but that the sending school did not investigate the complaints and law enforcement officials were not involved.  (Kane Decl. Ex. 6 at 3.) Tungseth included as supporting documentation a letter from the Makis, letters from C.K.M.'s previous coaches, and a letter from C.K.M.'s psychologist.  (Kane Decl. Ex. 6 at 4.)  As the sending school, Dassel-Cokato provided its position, as required, disclaiming any interest in interfering with C.K.M.'s varsity eligibility, but denying there were

intolerable conditions at the school.  (Kane Decl. Ex. 6 at 4.)  Dassel-Cokato included a

narrative detailing the nature of the incidents, its investigation of the incidents, and its

communications with Plaintiffs.  (Kane Decl. Ex. 6 at 4-5.)

> On November 8, 2016, the League denied the appeal, explaining:
>
>> The rationale submitted by the family in the appeal does not meet the
>> criteria identified in the MSHSL Transfer Eligibility Appeal Policy,
>> provisions 2.A-F.  The League agrees with the school's determination of
>> eligibility.  The student will be 100% ineligible for varsity competition for
>> one calendar year . . . .  The student is eligible for participation at the JV or
>> lower levels.  The documents submitted for review in support of the
>> family's rationale for the transfer eligibility appeal do not demonstrate
>> intolerable conditions existed for the student at Dassel-Cokato High School.

(Kane Decl. Ex. 1 at 3, Ex. 6 at 6.)  Tungseth emailed the sending school's response and

the League's response to Rhonda Maki on November 9, 2016.  (Kane Decl. Ex. 1 at 1.)

On November 10, 2016, Rhonda Maki emailed Tungseth and asked him to "send the

attached to the [League] to provide the necessary rational[e] for the transfer."  (Perry Decl.

Ex. F (unredacted version).)  On November 11, 2016, Tungseth forwarded to Perry

approximately eighty-four pages of additional information that "the family wanted [him] to

forward."  (Perry Decl. Ex. F at 21.)[2]  On November 17, 2016, Tungseth wrote to Perry

that the "family is just curious as to what the next step will be."  (Perry Decl. Ex. F at 2.)

Based on the communications with and information provided by Tungseth, Perry began the

process of scheduling a hearing, and he notified Tungseth on Tuesday, November 22, 2016,

that a hearing had been  scheduled the following Tuesday, November 29, 2016.  (Perry

Decl. ¶¶ 38-39.)  According to Perry, "[a]t the request of the schools, the hearing was

---

[2]  Defendants did not separately paginate this exhibit, so the Court uses the page numbers
on the CM/ECF legend.

scheduled as soon as possible." (Perry Decl. ¶ 39.) A "preliminary hearing packet" is attached to Perry's Declaration (Perry Decl. ¶ 39 & Ex. G), but nothing in the record indicates the packet was provided to Plaintiffs or Tungseth. There is also no indication in the record that Plaintiffs ever received a copy of the Bylaws, including the Fair Hearing Procedure and Acknowledgment of Rights.

On November 28, 2016, Plaintiffs' attorney Margaret O'Sullivan Kane wrote a letter to the League and canceled the November 29, 2016, hearing. (Perry Decl. Ex. H.) Later that day, the League's attorney responded by letter, reminding counsel that the hearing was the procedural due process mechanism provided in the League Bylaws and offering to postpone the hearing so that Plaintiffs could better prepare. (Perry Decl. Ex. I.) To date, Plaintiffs have not been willing to reschedule the hearing, but the League remains willing to provide one. (Perry Decl. ¶ 43.)

At present, C.K.M. is eligible for non-varsity competitions, as well as participation in varsity practices, scrimmages, "jamborees," and tryouts. (Perry Decl. ¶ 45.) She will be fully eligible for varsity competition on October 24, 2017.

## II. Discussion

Four factors govern a court's decision to grant a preliminary injunction: "(1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the preliminary injunction is in the public interest." *Emerson Elec. Co. v. Rogers*, 418 F.3d 841, 844 (8th Cir. 2005) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).

"At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys.*, 640 F.2d at 113. "A preliminary injunction is an extraordinary remedy, . . . and the burden of establishing the propriety of an injunction is on the movant." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).

### A.       Likelihood of Success on the Merits

Plaintiffs brings the following four claims, which the Court will address in turn: (1) violations of procedural and substantive due process under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, against the League and Perry; (2) breach of contract against the League; (3) breach of fiduciary duty against the League and Perry; and (4) violations of Minnesota Statute §§ 128C.03 and 128C.05 against the League and Perry.

### 1.       Procedural Due Process

Under the Fourteenth Amendment to the United States Constitution, a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The League "acts under color of state law when enforcing its eligibility rules." *Z.T. v. Minn. State High Sch. League*, No. 16-cv-3821(DSD/HB), 2016 WL 6826157, at *2 n.2 (D. Minn. Nov. 18, 2016) (citing *Brenden v. Indep. Sch. Dist. 742*, 477 F.2d 1292, 1295 (8th Cir. 1973)).

To establish a procedural due process violation, Plaintiffs must show: (1) they have a life, liberty, or property interest protected by the Due Process Clause, (2) Defendants deprived them of that interest, and (3) Defendants did not afford them adequate procedural rights. *See Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 966 (8th Cir. 2015)

10

(quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)).

### a.      Protected Property Interest

Plaintiffs argue that C.K.M. has a constitutionally protected property interest in participating in interscholastic varsity athletic competitions.

"Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "To have a constitutionally cognizable property interest in a right or a benefit, a person must have 'a legitimate claim of entitlement to it.'" *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (quoting *Roth*, 408 U.S. at 577). The Minnesota Constitution established the right to a public education, and this entitlement is a property interest protected by the Due Process Clause. *DeLaTorre v. Minn. State High Sch. League*, ---F. Supp. 3d----, No. 16-235 (JNE/KMM), 2016 WL 4394158, at *6 (D. Minn. Aug. 16, 2016).

After engaging in a comprehensive discussion of the relevant Minnesota state and federal cases, however, the *DeLaTorre* court concluded this property interest does not include eligibility to participate in interscholastic varsity athletic competitions. *Id.* at *6-9. The Court finds the discussion and analysis in *DeLaTorre* persuasive and adopts it fully by reference here. There is no "statute, rule, or case that definitively includes eligibility for interscholastic varsity athletic competition within the right to a public education under Minnesota law." [3] *Id.* at *6. *DeLaTorre* recognized that other decisions in this District on

---

[3] Plaintiff's argument that Minnesota Statute §§ 128C.03 or 128C.05 created a constitutionally protected property right is discussed separately in Part II.A.4 *infra*.

11

similar claims "are not uniform." *Id.* at *7-8 (citing *H.R. ex rel. S.R. v. Minn. State High Sch. League*, No. 13-cv-16 (DSD/JJK), 2013 WL 147416, at *3 n.4 (D. Minn. Jan. 14, 2013) (noting "[i]t is unclear whether interscholastic athletic eligibility is a constitutionally-protected property interest" and denying motion for preliminary injunction on other grounds); *W.D. ex rel. M.J.D. v. Minn. State High Sch. League*, No. 12-cv-2892 (JRT/SER), 2012 WL 5985514, at *4 (D. Minn. Nov. 29, 2012) (on motion for preliminary injunction, finding the student had "a probability of successfully establishing that he has a constitutionally protected property interest in interscholastic athletic eligibility"); *J.K. ex rel. Kaplan v. Minneapolis Pub. Sch. (Special Sch. Dist. No. 1)*, 849 F. Supp. 2d 865 (D. Minn. 2011) (on motion for preliminary injunction, noting that "courts have, by a wide margin, rejected the argument that students have a constitutionally protected property interest in participating in extracurricular activities such as interscholastic sports," but indicating the student had "a strong argument that, under Minnesota law, his property interest in an education extends to participation in interscholastic sports"); *Peterson v. Indep. Sch. Dist. No. 811*, 999 F. Supp. 665, 674 (D. Minn. 1998) (on motion for summary judgment, holding that "no property or liberty interest exists in a student's participation in

---

Plaintiff also suggested in her supporting memorandum and at the motion hearing that the League's receipt of "significant pecuniary gain" creates a constitutionally protected property right (Pl.'s Mem. Supp. Mot. Prelim. Injunction at 7), but she did not support her position with facts or law. Finally, the fact that the League established procedures governing student transfer eligibility determinations did not create a property right of constitutional magnitude. *See Campbell v. City of Champaign*, 940 F.2d 1111, 1113 (7th Cir. 1991) (determining that "a contract which merely creates a right to specified procedures does not create an entitlement upon which a claim of deprivation of property without due process of law can be founded), *cited with approval in Mumford v. Godfried*, 52 F.3d 756, 759 (8th Cir. 1995).

extracurricular activities"); *Giblin v. Minn. State High Sch. League*, No. CV 4-81-767, 1982 WL 963044 (D. Minn. Jan. 15, 1982) (preliminarily enjoining the League from disallowing students to participate in interscholastic activities)). But the court in *DeLaTorre* noted that the cases involving motions for preliminary injunctive relief were not adjudications on the merits, thereby suggesting they were of limited precedential value. *Id.* at *9. Accordingly, *DeLaTorre* dismissed with prejudice the student's Fourteenth Amendment procedural due process claim. *Id.* at *1.[4]

Consistent with *DeLaTorre* and *Peterson*, the Court concludes here "that the right to a public education under Minnesota law does not include eligibility for interscholastic varsity athletic competition." *See id.* at *9. And even if it did, it is not insignificant that C.K.M. remains eligible to participate in all interscholastic activities, including some varsity athletic activities, except interscholastic varsity athletic competitions. "[T]he property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process." *Id.* (citing *Stevenson*, 800 F.3d at 968 (quoting *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997))).

In light of the above, the Court concludes Plaintiffs are not likely to succeed on their

---

[4] At the motion hearing, Plaintiffs' counsel argued that the *DeLaTorre* court's analysis was deficient because it did not apply *Mathews v. Eldridge*, 424 U.S. 319 (1976) to analyze whether there was a constitutionally protected property interest in participating in interscholastic varsity athletic competitions. But the issue in *Mathews* was not whether the plaintiff had a constitutionally protected property right in the receipt of Social Security disability benefits. Rather, the issue was whether the administrative procedures provided all the process constitutionally due before the property right, which had been established in earlier cases and was not contested by the agency, was deprived. *Id.* at 332-33.

procedural due process claim.  But even if Plaintiffs had established a constitutionally

protected property interest, the Court finds they were afforded adequate process in light of

the interest at issue, as set forth below.

> **b.   The Deprivation of the Interest and Whether Defendants Afforded Plaintiffs Adequate Process**

"The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333

(1976) (quotation omitted).  "Due process is a flexible concept, requiring only 'such

procedural protections as the particular situation demands.'"  *Clark v. Kansas City Mo.

Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews*, 424 U.S. at 334 (quoting

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))).

The interest at stake in this case is C.K.M.'s eligibility to participate in

interscholastic varsity athletic competitions.  This is an important interest, especially to

C.K.M., who by all accounts is a dedicated and talented student athlete.  But when viewed

against deprivations such as expulsion or suspension from school, or the ineligibility to

participate in all interscholastic or extracurricular activities, the interest at stake here

warrants fewer procedural protections.[5]

---

[5]  Plaintiffs suggested at the hearing that C.K.M. was entitled to the same process
afforded to students dismissed under the Pupil Fair Dismissal Act.  The Court disagrees.
The policy of the Pupil Fair Dismissal Act is codified in Minn. Stat. § 121A.42: "No
public school shall deny due process . . . to any public school pupil involved in a
dismissal proceeding which may result in suspension, exclusion, or expulsion."  There is
no such statutory policy protecting transfer eligibility, nor, as the Court has noted, is the
deprivation of eligibility to participate specifically in varsity interscholastic competition
comparable to the deprivation when a student is expelled or suspended from school.  In
addition, the procedures for exclusion and expulsion, including the right to a hearing and

The League's Bylaws and Handbook are publicly available online twenty-four hours a day, which Plaintiffs knew almost six months before C.K.M. transferred.  On March 30, 2016, Rhonda Maki expressed her understanding of the League's transfer eligibility Bylaws in an email sent directly to Perry.  (Perry Decl. Ex. G at 78 (unredacted).)  In Perry's response the next day, he summarized the relevant provisions, identified where they could be found in the League Handbook, and informed Rhonda Maki that the Handbook could be accessed on the main page of the League's website.  (Perry Decl. Ex. G at 78 (unredacted).)  The Court finds that Plaintiffs had sufficient notice of the League's transfer eligibility rules and procedures.

Plaintiffs were also provided multiple opportunities to be heard at a meaningful time and in a meaningful manner.  On the day C.K.M. transferred to Maple Lake, Plaintiffs sought and obtained an initial determination from Tungseth, pursuant to the League's Bylaws governing transfer eligibility determinations.  That determination was immediately forwarded to the League for response.  The League responded in two days, and the League's response was forwarded to Plaintiffs.  Plaintiffs appealed the adverse determination and were allowed to submit documentation in support of the appeal.  Notice of the League's denial of the appeal was timely provided to Plaintiffs.  Plaintiffs asked Tungseth to send additional documentation to the League and asked Tungseth what the next steps would be.  Although Plaintiffs did not expressly request a hearing, it was reasonable for the League to interpret their words and actions as a request for a hearing,

---

written notice of rights, are bestowed by statute, Minn. Stat. § 121A.47, whereas procedures governing determination of varsity eligibility for transfer students are not.

particularly in view of the fact that the sending school had taken issue with Plaintiffs' account of C.K.M.'s experience and the school's conduct.  The Court finds no constitutional infirmity with the process afforded Plaintiffs until this point.

The League promptly scheduled a hearing for the Tuesday after Thanksgiving and gave Plaintiffs six days notice, including Thanksgiving Day and the following weekend. There is nothing in the record indicating that the League informed Plaintiffs of their rights concerning the hearing, including their right to representation as provided in the Bylaws, or of the manner in which the hearing would be conducted.  Under these circumstances, it was reasonable for Plaintiffs to cancel the hearing.  But it was not reasonable for Plaintiffs to refuse the League's offer to reschedule the hearing, or to seek additional information that might have allowed them to prepare and participate more effectively, for in doing so, they deprived themselves of a process that would have given them an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  The League's offer to hold a hearing remains open.

The Court now turns to the remaining challenges to the process afforded Plaintiffs by the League.  Plaintiffs take issue with the League's procedure of determining whether an exemption applies only after a transfer has occurred and eligibility has been denied. "A post-deprivation hearing can be sufficient process."  *Wooten v. Pleasant Hope R-VI Sch. Dist.*, 270 F.3d 549, 551 (8th Cir. 2001).  Here, Plaintiffs requested an initial eligibility decision on the day C.K.M. transferred.  There was no delay by any party during the review and appeal process, and the League scheduled a hearing less than a month after the initial determination was made.  In light of the interest at stake, it did not violate due

process for the League to determine whether an exemption applied after C.K.M. transferred to another school and was denied eligibility.  *See DeLaTorre*, 2016 WL 4394158, at *10.

Plaintiffs next object to the lack of an express standard governing the "intolerable conditions" exemption and the League's failure to provide advance notice of its interpretation of this exemption.  As to the first argument, the Court finds that the term "intolerable conditions" is not so vague as to violate due process.  With respect to the second argument, given the nature of the interest at stake, due process did not require the League to give advance notice of its interpretation of the term.

Plaintiffs also contend the League should have made public all of its transfer eligibility determinations.  But due process certainly does not require the disclosure of private student records, especially in light of the limited interest at stake here.

Plaintiffs make several conclusory arguments such as: the appeal process did not provide meaningful due process, and the League failed to apply the plain meaning of the applicable Bylaws.  Without specific facts, argument, and supporting law, the Court is unable to frame a discussion of such arguments.

In addition, several of Plaintiffs' accusations against the League run contrary to the facts of record.  For example, Plaintiffs contend the League did not give a reason for denying her transfer eligibility.  This is belied by the email to Plaintiffs from Tungseth, in which he forwarded the League's response.  Plaintiffs also contend the League did not provide them with a post-deprivation remedy.  To the contrary, the League's Bylaws provided for, and the League offered, an initial determination immediately after the transfer, League review of that determination, an appeal process, a hearing before an

17

independent hearing officer, and final review by the Board of Directors.  Plaintiffs alone are responsible for ceasing their post-deprivation remedies midstream, and Plaintiffs' suggestion that they stopped the process because it is inherently flawed is conclusory and unavailing.

Plaintiffs also fault the League for not communicating directly with them rather than through the school.  The League's Bylaws provide that all communications concerning transfer eligibility to or from a parent or student be channeled through the receiving school administrator.  Plaintiffs do not show how these rules violate due process in the abstract or as they were applied to their case.  Based on the record before the Court, the Court finds this process was not inadequate.

In sum, Plaintiffs have not shown that the transfer eligibility procedures set forth in the Bylaws—or, where those procedures were not followed, the procedures actually provided to her—deprived her of adequate procedural rights.  Consequently, Plaintiffs are not likely to succeed on their procedural due process claim on this basis as well.

### 2.    Substantive Due Process

Plaintiffs assert that the League's bylaws violated C.K.M.'s substantive due process rights.  Because the League does not give advisory opinions, C.K.M. argues, she had no notice of its interpretation of the "intolerable conditions" standard.  C.K.M. also cites to an audit in 2016 by the Minnesota Department of Education, which found that not one of eight student athletes who requested transfer eligibility were found eligible.

The trouble with Plaintiffs' argument is they do not identify a legitimate substantive due process right.  Even if the Court assumes the existence of a property right, "not every

such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, . . . substantive due process rights are created only by the Constitution." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring). For the most part, substantive due process protects "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Absent a showing of such a right, Plaintiffs cannot establish a substantive due process claim. Nor have Plaintiffs shown Defendants' conduct was so "arbitrary, capricious or so unreasonable to be egregious." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). For these reasons, Plaintiffs are not likely to succeed on their substantive due process claim.

### 3. Breach of Contract and Breach of Fiduciary Duty Claims

To establish a breach of contract claim under Minnesota law, Plaintiffs must establish: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Parkhill v. Minnesota Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (citations omitted), *aff'd*, 286 F.3d 1051 (8th Cir. 2002). Plaintiffs suggest that C.K.M.'s agreement to abide by the Bylaws in exchange for her eligibility formed a contract between C.K.M. and the League. The Court disagrees that such a contract was formed. *See Z.T.*, 2016 WL 6826157, at *3. But even assuming there was a contract, Plaintiffs have not shown that Defendants breached the contract. The parties do not dispute that C.K.M. did not meet any of the five enumerated conditions required for her to maintain eligibility. C.K.M.'s claim

is premised on the League's refusal to grant her an exception to the requirement that one of those conditions be met.  But granting such an exception is not a term of the alleged contract.  *See Z.T.*, 2016 WL 6826157, at *3.

Plaintiffs also argue that C.K.M. was a third party beneficiary of contracts between the League and member schools, and that the League's mission statement created a duty to C.K.M. to abide by the Bylaws and to interpret and implement the Bylaws consistent with the mission statement and the language of the Bylaws.  Plaintiffs cite no authority in support of this claim, much less discuss how they are likely to succeed.  Similarly, Plaintiffs cite no authority in support of their breach of fiduciary duty claim or explain how they are likely to succeed.

Consequently, the Court finds that Plaintiffs are not likely to succeed on their breach of contract or breach of fiduciary duty claims.

### 4.      Violations of Minnesota Law Requiring Public Notice of Eligibility Rules

Plaintiff contends the League did not comply with Minnesota Statute §§ 128C.03 and 128C.05, subd. 3, which violated due process.

Minnesota Statute § 128C.03 provides that "[t]he [L]eague shall adopt procedures to ensure public notice of all eligibility rules and policies that will afford the opportunity for public hearings on proposed eligibility rules."  Minn. Stat. § 128C.03.  Minnesota Statute § 128C.05, subd. 3, directs an "appropriate regional committee" of the League to "hear a request for a waiver to allow a nonresident student to participate in another district when that participation affects a school's classification for interscholastic athletic activities.  The

regional committee must review requests for waivers and make timely recommendations to the Minnesota State High School League Board of Directors."  Minn. Stat. § 128C.05, subd. 3.

The Court finds Plaintiffs are unlikely to succeed on these claims.  As with Plaintiffs' procedural due process claim, Plaintiffs have not identified a constitutionally protected property or other interest or shown that she was deprived of that interest without due process.  Nor do these statutes create such an interest.  By its terms, § 128C.03 requires public notice of and a hearing on proposed eligibility rules.  Plaintiffs do not claim Defendants failed to give notice of or hold a hearing on proposed rules.  Section 128C.05, subd. 3, requires a regional committee to hear a request for a waiver when a school's classification would be affected.  There is no allegation that Dassel-Cokato's or Maple Lake's classification would be affected by C.K.M.'s participation in interscholastic athletics.

### B.    Threat of Irreparable Harm

Plaintiffs argue that C.K.M. will suffer irreparable harm if an injunction is not issued, because she will be deprived of her ability to play varsity sports.  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  "While not as grave as many matters that pass before this Court, the harm of losing a year of varsity eligibility is difficult to quantify and would constitute irreparable harm."  *W.D. ex rel. M.J.D.*, 2012 WL 5985514, at *6; *see Z.T.*, 2016 WL 6826157, at *4; *Giblin*, 1982 WL 963044, at *2 ("The threat of irreparable

harm to plaintiffs consists of [plaintiffs'] inability to play varsity sports if the League's ruling is allowed to stand . . . . If plaintiffs were ultimately found to be entitled to permanent injunctive relief after a trial on the merits, that relief would be meaningless if the athletic seasons were over.").

The Court finds that Plaintiffs have shown the potential for irreparable harm because the alleged harm to C.K.M. could not be fully compensated by monetary damages. This factor therefore favors granting injunctive relief.

### C.       Balance Between Harm to Plaintiffs and Injury to Defendants

Defendants assert the League would be harmed by a preliminary injunction because an injunction would adversely affect the League's ability to interpret and enforce its Bylaws and rules. On the other hand, C.K.M. has shown she will be irreparably harmed by her ineligibility to participate in interscholastic varsity athletic competitions. The harm to C.K.M. is tempered, however, by her ongoing eligibility for non-varsity competitions and participation in varsity practices, scrimmages, and other activities. On balance, the Court finds this factor neutral. *See Z.T.*, 2016 WL 6826157, at *4.

### D.       Public Interest

Plaintiffs argue that public policy favors C.K.M.'s ability to transfer to another public school due to intolerable conditions at her former school, and that public policy does not support an agency's inadequate notice of its interpretation and application of its rules. These arguments must be rejected because Plaintiffs have not demonstrated a likelihood of success on the merits of their claims. *See Z.T.*, 2016 WL 6826157, at *4. The League argues that public policy supports the consistent and uniform application of League Bylaws

and rules to student extracurricular activities.  This is a compelling public interest, and this factor weighs against granting injunctive relief.

### E.   Conclusion

The balance of equities weighs in favor of denying the motion for preliminary injunctive relief.  Given the facts and circumstances of this case, the most influential factor is that Plaintiffs are not likely to succeed on the merits of their claims.  The threat of irreparable injury to C.K.M. is present, but does not outweigh the harm an injunction could inflict on Defendants.  Public policy favors Defendants.  Finally, granting the motion would alter, not preserve, the status quo.

Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Waiver of Security [Doc. No. 2] be **DENIED**.

Dated:  December 27, 2016          _s/ Hildy Bowbeer_____
                                  HILDY BOWBEER
                                  United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set

forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.